UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 25-mj-210 |
| | : | |
| v. | : | |
| | : | |
| **DA'SHAUN JOHNSON,** | : | |
| | : | |
| **Defendant.** | : | |

GOVERNMENT'S MEMORANDUM
IN SUPPORT OF PRETRIAL DETENTION

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm), as the defendant, Da'Shaun Johnson (herein referred to as Johnson or the defendant), is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm).

Johnson was arrested in possession of a loaded privately made firearm less than four months after he was convicted of illegally carrying a gun and given a suspended sentence. The evidence presented to the Court shows that the defendant, if released, poses a demonstrated danger to the public and is a flight risk. As described below, all four statutory factors in § 3142(g) strongly favor pretrial detention.

I.      **Factual and Procedural History**

On September 6, 2025, at approximately 8:48 p.m., United States Park Police ("USPP") Detective Michael Lentine and Investigator Nicolas Rice of the USPP Executive Office were patrolling in an unmarked USPP Cruiser wearing plain clothes with external vests bearing US PARK POLICE. USPP Investigator Andrew Keness was in another unmarked cruiser in the area.

While in the area of Malcom X Boulevard and Martin Luther King Jr. Avenue Southeast, Washington, D.C., Detective Lentine observed a silver Chevrolet bearing Maryland license plate 2CV4482. The vehicle had nonoperational tag lights. Detective Lentine activated his cruiser's

1

emergency equipment and conducted a traffic stop at the intersection of Alabama Avenue Southeast and 10th Place Southeast, Washington, D.C. Two individuals were in the Chevrolet—Da'Shaun Johnson in the driver's seat, and another individual (herein referred to as Male 1) in the passenger seat.

Detective Lentine asked Johnson for his license, registration, and insurance. When Johnson opened the glove box to retrieve the requested documents, Detective Lentine observed in plain view what appeared to be a bottle consistent with those commonly used for promethazine. When asked about the bottle, Johnson appeared to become flustered and immediately began to fumble with the bottle. At Detective Lentine's request, Johnson gave the bottle to the detective. Detective Lentine observed that all the labelling had been removed from the bottle besides "Rx Only." A trace amount of liquid was observed at the bottom of the bottle.

As the traffic stop progressed, Johnson began profusely sweating from his forehead down to his neck. Detective Lentine asked Johnson about his behavior and Johnson responded that the vehicle's air conditioning was not working. Detective Lentine then asked Johnson to step out the vehicle, and Johnson complied. Detective Lentine asked Johnson if he could check him for weapons. While Johnson initially refused, he subsequently raised his hands from his side. Detective Lentine patted Johnson down and did not find any weapons.

Detective Lentine then asked Male 1 to step out of the vehicle, and Investigator Keness asked if Male 1 had any weapons. Male 1 responded that he had a weapon, but it was "in his name." In a pat down, Detective Lentine recovered a black Glock 21 with one round in the chamber and 11 rounds of ammunition in the 13-round capacity magazine from the front of Male 1's waistband. Male 1 did not have a valid license to carry this firearm and was subsequently placed under arrest for Carrying a Pistol Without a License (CPWL).

Law enforcement then searched the vehicle and discovered an additional firearm located underneath the driver's seat where Johnson was sitting.  *See* Figure 1.  The firearm was a hybrid weapon, consisting of parts from a Glock 43 and a privately made firearm (commonly referred to as a ghost gun), fully loaded with 10 rounds of 9mm ammunition in a 10-round capacity magazine.  *See* Figure 2.


Figure 1: Firearm Under Driver's Seat


Figure 2: Firearm (right) and Promethazine Bottle

Law enforcement confirmed Johnson's identity through his Maryland driver's license.  A criminal history check revealed that Johnson had been convicted of possessing a loaded handgun in a vehicle and sentenced on July 19, 2025, to three years of incarceration, all of which was

suspended in Upper Marlboro, Maryland. Accordingly, Johnson would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he possessed this firearm and ammunition.

## II.     Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

### a.  The Bail Reform Act Factors All Favor Detention

The United States seeks detention pursuant to §§ 3142(f)(1)(E) (felony involving possession of a firearm). The Bail Reform Act, under 18 U.S.C. § 3142(g), enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Where the government has shown by clear and convincing evidence that the defendant is a danger to the community, or by a preponderance of the evidence that the defendant is a flight risk, the Court should rule that the

defendant be detained pretrial. *See United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021); *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

Each of these factors weigh in favor of pretrial detention in this case. *See* 18 U.S.C. § 3142(g). The facts and circumstances of this case should lead the Court to conclude that there are no conditions or combination of conditions that would assure the safety of the community. *See* § 3142(e)(1).

### i. The Nature and Circumstances of this Offense Merits Detention.

The first factor to be considered is the nature and circumstances of the offense charged. This factor weighs in favor of detention.

A fully loaded ghost gun was found under the driver's seat where the defendant was sitting during a traffic stop. He was subsequently charged with unlawfully possessing a fully loaded firearm—a serious crime that carries up to fifteen years in prison under § 924(a)(8). Judges of this Court have warned against discounting the inherent danger associated with loaded firearms. *See, e.g.*, *United States v. Blackson*, No. 23-cr-25, 2023 WL 1778194, at *7–8 (D.D.C. Feb. 6, 2023) (asserting that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm, including when it is "at the ready, on his person, and easily within reach"), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). This danger is compounded by the fact that the passenger also possessed a loaded firearm. *See* Figure 2. The defendant and Male 1 were each armed with a fully loaded firearm during the traffic stop.

The possession of loaded firearms by convicted felons is extremely dangerous. An increase in shootings and violent crimes involving firearms has shown the negative impact that the unregulated flow of firearms can have on a community—especially when those firearms are untraceable, like the firearm the defendant had. As a threshold matter, the defendant's possession of a fully loaded handgun placed the community at great risk. *See e.g.*, *United States v. Gassaway*,

No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2-3 (D.D.C. Sept. 21, 2020) (making the same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a firearm "has the great potential to escalate into violence").

Moreover, the defendant's firearm had many troubling characteristics. The firearm was fully loaded with ten rounds of ammunition at the time of recovery. Furthermore, the defendant's ability to obtain this firearm, despite being prohibited from possessing a firearm, is very troubling. The firearm recovered was a "hybrid weapon" most commonly referred to as a ghost gun or privately made firearm ("PMF"). PMFs are firearms that have been completed, assembled, or produced by a person without a manufacturing license. *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, Privately Made Firearms (May 19, 2025) www.atf.gov/firearms/privately-made-firearms. PMFs make it easier for those, like the defendant, prohibited from possessing a gun to obtain one and are often used to evade law enforcement. *Id.* The danger of PMFs stems from their difficulty to be traced and linked to the crimes they were used in. *See id.* From 2016 through 2021 there were approximately 45,240 suspected PMFs recovered from potential crime scenes that were reported to ATF, including 692 homicides or attempted homicides. *Id.* This particular firearm was created from parts of a Glock 43 and other PMF parts, making it untraceable for law enforcement. The defendant cannot possess a firearm legally due to his status as a felon, therefore, he had an illicit source to obtain the firearm, further demonstrating the potential dangerousness associated with the weapon and the defendant's prior actions.

Thus, the first factor weighs in favor of detention.

6

### ii. The Weight of the Evidence Against the Defendant is Strong.

The second factor to be considered is the weight of the evidence against the defendant. This factor also weighs in favor of detention. The weight of the evidence should be considered equally with the other § 3142 factors. Notably, in *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *Blackson*, No. 23-3020, 2023 WL 2663034. The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. In this case, the officer recounted in great detail the events leading up to searching the car. In the search, officers found a fully loaded firearm under the driver's seat where the defendant had been sitting. He also provided images of the firearm and where it was recovered from in the vehicle. The evidence in this case proves that the defendant constructively possessed the firearm.

This factor weighs in favor of pre-trial detention.

### iii. The Defendant's History and Characteristics Merit Detention.

The third factor to be considered is the history and characteristics of the defendant, which weighs heavily in favor of detention. In May of this year, the defendant was convicted of possession of a loaded handgun in a vehicle in Upper Marlboro, Maryland and sentenced to three years' incarceration (all suspended) and two years' probation. *See* PSR 2. His possession of this firearm was in violation of the terms of his probation.

While his criminal history is minimal, it establishes that the defendant can and will continue to possess firearms notwithstanding any court order. His possession of this firearm is a direct violation of his probation. Moreover, the defendant cannot argue that his previous conviction was a product of his past. He was sentenced less than four months ago and has been in direct contact with his probation officer since, yet he has already been caught possessing another firearm. The defendant has not learned from his recent conviction.

The defendant has clearly shown that he cannot comply with court orders. A flight risk is more than a risk of leaving the jurisdiction. It incorporates the risk that the defendant will not comply with the conditions set by the Court that are designed to reasonably assure the defendant's appearance and safety of the community. *See* Gov't Ex. A – Transcript of Hearing at 20, ln. 7-16, *United States v. Freeman*, No. 25-cr-127 (BAH) (D.D.C. May 9, 2025) (unpublished). The Court should have no faith that he will follow this Court's orders or not abscond from justice if released prior to trial. The combination of a recent conviction identical to the charge here and the defendant's failure to comply with his release conditions makes the defendant's history and characteristics weigh heavily in favor of pretrial detention.

### iv.  The Defendant Presents a Danger to the Community.

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, similarly weighs in favor of detention.  Here, the defendant has demonstrated in the instant offense that he remains a risk to the community as evidenced by his recidivism and his failure to obey court orders.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the court does not explicitly find that the defendant is at risk of committing acts of violence.  *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

The defendant's possession of this firearm alone presents a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public.").  More significantly, the defendant's previous encounter with the criminal justice system in his recent firearm related conviction did nothing to deter him from the exact same behavior—possessing a fully loaded firearm.  Not even four months into his probation, the defendant has shown that he will continue to possess firearms notwithstanding any court order that prohibits him from doing so.

Given the defendant's demonstrated noncompliance with the laws governing possession of firearm, the defendant presents an ongoing danger. The Court's supervision is insufficient to

prevent the defendant from possessing firearms and ensure community safety, as evidenced by his prior noncompliance with release terms. Because no condition or combination of conditions of release are adequate to protect the community from this defendant or the defendant's return to Court if released, this Court should detain him pending trial.

## Conclusion

The government respectfully requests that the Court detain the defendant pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: /s/ *Haley Pennington*
HALEY PENNINGTON
Special Assistant United States Attorney
Illinois Bar No. 6349612
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-740-4684
Email: haley.pennington2@usdoj.gov